IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| NORTHERN NEW JERSEY ORTHOPAEDIC SPECIALISTS, P.A.; MARC A. COHEN, M.D.; BERGEN ANESTHESIA & PAIN MANAGEMENT; MICHAEL D. MOST, M.D. a/s/o E.C., <br><br>  Plaintiffs, <br><br> v. <br><br> HEALTH NET OF NEW JERSEY, INC.; ABC CORP. 1-10 (said names being fictitious and unknown entities), <br><br>  Defendant(s). | CIVIL ACTION NO.: 12-06257-SRC-CLW |

**HEALTH NET OF NEW JERSEY'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

**CONNELL FOLEY LLP**
*Attorneys for Defendant*
*Health Net of New Jersey*
Liberty View
457 Haddonfield Rd., Ste. 230
Cherry Hill, New Jersey 08002
(856) 317-7100

*Of Counsel*:
Christine S. Orlando, Esquire

*On the Brief*:
Matthew A. Baker, Esquire

i

# TABLE OF CONTENTS

**PAGE**

INTRODUCTION ..................................................................................................................... 1

STATEMENT OF FACTS AND PROCEDURAL HISTORY.................................................. 2

    A.    The Parties ...................................................................................................... 2

    B.    Plaintiffs' Claim for Benefits Under the Plan................................................. 2

    C.    HNNJ's Proper Benefit Determinations Under the Terms of E.C.'s
Health Benefit Plan .................................................................................................. 3

        1.    E.C.'s Health Benefit Plan for Calendar Year 2009 ........................... 3

        2.    E.C.'s Health Benefit Plan for Calendar Year 2010 ........................... 5

        3.    HNNJ's Proper Denial of Benefits ..................................................... 6

        4.    The Appeals Record............................................................................ 7

LEGAL ARGUMENT............................................................................................................... 9

    A.    The Legal Standard ........................................................................................ 9

    B.    Plaintiffs Northern NJ Ortho and Dr. Most Failed to Exhaust the
Mandatory Administrative Appeals Process under the Terms of the Plans............ 9

    C.    HNNJ's Benefit Determinations were not Arbitrary and Capricious ........... 10

    D.    ERISA Completely and Expressly Preempts Plaintiffs' State Law
Claims ..................................................................................................................... 12

        1.    Section 502(a) of ERISA Completely Preempts Plaintiffs' State Law Claim for
Negligent Misrepresentation.............................................................. 13

        2.    Section 514(a) of ERISA Expressly Preempts NJ Back's State Law Claims........... 13

CONCLUSION........................................................................................................................ 15

# TABLE OF AUTHORITIES

*Cases*

*Abnathya v. Hoffmann-La Roche, Inc.*, 2 F.3d 40 (3d Cir. 1993) .................................................. 11

*Aetna Health, Inc. v. Davila*, 542 U.S. 200 (2004) ....................................................................... 14

*Celotex Corp. v. Catrett*, 477 U.S. 316 (1986) ................................................................................ 9

*Estate of Schwing v. Lilly Health Plan*, 562 F.3d 522 (3d Cir. 2009), *cert. denied*, 131 S. Ct. 1048 (2011) ............................................................................................ 11

*FMC Corp. v. Holliday*, 498 U.S. 52 (1990). ................................................................................ 14

*Gambino v. Arnouk*, 232 Fed. Appx. 140 (3d Cir. 2007) .............................................................. 11

*Harrow v. Prudential Ins. Co.*, 279 F.Supp.2d 244 (D.N.J. 1999) ................................................ 10

*Howley v. Mellon Fin. Corp.*, 625 F.3d 788 (3d Cir. 2010) ..................................................... 11, 12

*Kelso v. General American Life Ins. Co.*, 967 F.2d 388 (10th Cir. 1992). ................................... 15

*Majka v. Prudential Ins. Co.*, 171 F.Supp.2d 410 (D.N.J. 2001) .................................................. 10

*Marciniak v. Prudential Fin. Ins. Co. of Am.*, 184 Fed. Appx. 266 (3d Cir. 2006) ....................................................................................................................................... 12

*McCall v. Metropolitan Life Insurance Company*, 956 F. Supp. 1172 (D.N.J. 1996) ........................................................................................................................... 9

*Metropolitan Life Ins. Co. v. Price*, 501 F.3d 271 (3d Cir. 2007) ................................................ 10

*Metz v. United Counties Bancorp.*, 61 F.Supp. 2d 364 (D.N.J. 1999) .......................................... 15

*Miller v. Am. Airlines, Inc.*, 632 F.3d 837 (3d Cir. 2011) ............................................................. 11

*Moats v. United Mine Workers of Am. Health & Ret. Funds*, 981 F.2d 685 (3d Cir. 1992)) ........................................................................................................................ 12

*Pilot Life Ins. Co. v. Deadeaux*, 481 U.S. 41 (1987) .................................................................... 13

*Pryzbowski v. U.S. Healthcare*, 245 F.3d 266 (3d Cir. 2001) ................................................ 13, 14

*Shapiro v. Metro. Life Ins. Co.*, Civ. A. No. 08-6204, 2010 WL 1779392 (D.N.J. Apr. 30, 2010), aff'd, 430 Fed. App'x 169 (3d Cir. 2011) ........................................ 12

*Other Authorities*

29 U.S.C. § 1001 *et seq*................................................................................................ 1, 2

29 U.S.C. § 1132(a) ................................................................................................ 11, 13

29 U.S.C. § 1144(a) ................................................................................................ 13, 14

Rule 56(c)......................................................................................................................... 9

# INTRODUCTION

Plaintiffs Northern New Jersey Orthopaedic Specialists ("Northern NJ Ortho"), Marc A. Cohen, M.D. ("Dr. Cohen"), Bergen Anesthesia & Pain Management ("Bergen Anesthesia") and Michael D. Most, M.D. ("Dr. Most")(collectively "Plaintiffs"), brought this against Defendant Health Net of New Jersey ("HNNJ"), as the alleged assignee of E.C., to recover benefits for services allegedly rendered to E.C. between 2009 and 2012.  E.C. received health benefits through an employee health benefit plan sponsored by Ferris Brothers, Inc., which is governed by the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 et seq. ("ERISA").

Plaintiffs allege to have performed numerous services on E.C., beginning on May 4, 2009 and continuing through February of 2012 and submitted claims to HNNJ for these services. HNNJ properly processed these claims pursuant to the terms of the ERISA-governed plan under which E.C. had coverage.  The limited appeals undertaken by the Plaintiffs Dr. Cohen and Bergen Anesthesia simply re-requested that payment be made.  Plaintiffs Northern NJ Ortho and Dr. Most did not file any appeals.

By this motion, HNNJ moves for summary judgment on the basis that Plaintiffs Northern NJ Ortho and Dr. Most failed to exhaust the mandatory administrative appeals procedure as set forth in the applicable health benefit plan.  Furthermore, Plaintiffs Dr. Cohen and Bergen Anesthesia have not demonstrated that HNNJ's benefit determination was arbitrary and capricious.  As such, HNNJ is entitled to summary judgment as a matter of law.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

**A.     The Parties**

Defendant Health Net of New Jersey, Inc. ("HNNJ") is an insurance company authorized to transact business in the State of New Jersey. (Complaint, ¶ 1). HNNJ, among other things, administers benefits for participants and beneficiaries of benefit plans governed by ERISA. (Notice of Removal, ¶ 5).

Plaintiff Northern New Jersey Orthopaedic Specialists, P.A. ("Northern NJ Ortho") is an orthopaedic medical center having its office located in Morristown, New Jersey. (Complaint, ¶ 1). Plaintiff Marc A. Cohen, M.D. ("Dr. Cohen") is a licensed surgeon and works out of Northern NJ Ortho. Dr. Cohen allegedly performed medical procedures on patient E.C. (Complaint, ¶ 2). Plaintiff Bergen Anesthesia and Pain Management ("Bergen Anesthesia") is an anesthesia provider associated with Northern NJ Ortho and allegedly administered anesthesia to E.C. (Complaint, ¶ 3). Plaintiff Michael D. Most, M.D. ("Dr. Most") is a licensed surgeon who allegedly performed medical procedures on E.C. (Complaint, ¶ 4).

Each of the Plaintiffs is an out-of-network provider and lacks any contract with HNNJ. (Complaint, ¶ 1). Accordingly, Plaintiffs bring this action as the purported assignee of patient E.C. (Complaint, ¶ 8). E.C. received health care benefits through his employer, Ferris Brothers, Inc., under the terms of a HNNJ Small Group HMO POS Plan, which is governed by the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.* ("ERISA").

**B.     Plaintiffs' Claim for Benefits Under the Plan**

Plaintiffs filed a complaint against HNNJ seeking increased reimbursement for services purportedly rendered to E.C. during 2009 through 2012. (Complaint, ¶ 14, 15, 16, 17). Plaintiffs failed to identify what procedures were performed but are seeking increased reimbursement for these procedures in the amount of $181,529.97. (*Id.*). Plaintiff Northern NJ Ortho submitted

charges for dates of services May 4, 2009 and February 2, 2012, in the aggregate amount of $9,143.75. (Complaint, ¶ 14). Plaintiff Dr. Cohen submitted charges for dates of service ranging from February 2, 2010 through June 1, 2010, in the aggregate amount of $148,546.00. (Complaint, ¶ 15). Plaintiff Dr. Most submitted charges in the amount of $21,930. (Complaint, ¶ 16). Plaintiff Bergen Anesthesia submitted charges in the amount of $4,950. (Complaint, ¶ 17). Each of the claims was denied in their entirety, except for the claims submitted on behalf of Bergen Anesthesia, which were paid pursuant to the terms of the Plans. (Complaint, ¶ 14, 15, 16, 17).

Plaintiffs contend they are entitled to payment at their billed charges, even though no payment was due under the terms of the Plans. According to Plaintiffs, they are entitled to the "reasonable and customary fee" for their services. (Complaint, ¶ 12, 13). Plaintiffs contend that the "reasonable and customary" fee is the fee "that 'out-of-network' providers, like the Plaintiffs, normally charge to their patients for services provided in accordance with their experience, education, complexity of the procedures provided, and overhead expenses in the geographic region." (Complaint, ¶ 13). Plaintiffs now seek increased reimbursement for the services rendered in the amount of $181,529.97. (Complaint, ¶ 14, 15, 16, 17). Plaintiffs also bring a state law claim for negligent misrepresentation. (Complaint, Count III).

C.    **HNNJ's Proper Benefit Determinations under the Terms of E.C.'s Health Benefit Plan**

    1.    **E.C.'s Health Benefit Plan for Calendar Year 2009**

E.C. received health benefits through his employer, Ferris Brothers, Inc., under an employee benefit plan governed by ERISA. During the calendar year 2009, E.C. had coverage pursuant to a HMO-POS Plan (Certification of Matthew A. Baker, Exhibit "A")(the "2009 Plan"). Under the terms of the 2009 Plan, HNNJ had "the sole right to make a decision or

3

determination." (Baker Cert., Exhibit "A" pp. 15). The 2009 Plan defined a non-network provider as a "provider which is not a network provider." Network providers have "an agreement directly or indirectly with [Health Net] to provide Covered Services or Supplies." (Baker Cert., Exhibit "A" pp. 21). The 2009 Plan defines cash deductible as the "amount of Covered Charges that a Member must pay before the Contract pays any benefits for such charges." (Baker Cert., Exhibit "A" pp. 12). The 2009 Plan further defines coinsurance as the "percentage of Covered Services of Supplies or the percentage of Covered Charges, as applicable, that must be paid by a Member." (Baker Cert., Exhibit "A" pp. 13).

Under the 2009 Plan, non-network benefits are reimbursed at:

> an amount that is not more than the usual or customary charge for the service of supply as We [Health Net] Determine, based on a standard approved by the Board. The Board will decide a standard for what is Reasonable and Customary for the Non-Network Benefits under the Contract. The chosen standard is an amount which is most often charged for a given service by a Provider within the same geographic area.

(Baker Cert., Exhibit "A" pp. 24). The 2009 Plan explicitly excludes from coverage the "amount of any charge which is greater than a Reasonable and Customary Charge with respect to ... all Non-Network benefits." (Baker Cert., Exhibit "A" pp. 75). Non-network services are subject to a calendar year cash deductible of $1,000 per covered person and coinsurance of 30%. (Baker Cert., Exhibit "A" pp. 4).

The 2009 Plan also contains a well-defined appeal process. For appealing a decision that is not a utilization review determination, the "first step is to call the Health Net customer service toll-free number on Your ID card. If after speaking with a representative You are still dissatisfied with the Health Net decision, You have the right to file a complaint." (Baker Cert., Exhibit "A" pp. 43). If the member or representative is still dissatisfied, they "have up [sic] 180 days from the date of the event to file a complaint. A complaint can be made over the phone ...

or by writing to: Health Net Customer Service Department, 3501 State Highway 66, Neptune, NJ 07754." (*Id.*).

### 2. E.C.'s Health Benefit Plan for Calendar Year 2010

During the calendar year 2010, E.C. had coverage pursuant to an HMO Plan (Baker Cert., Exhibit "B")(the "2010 Plan"). Under the terms of the 2010 Plan, HNNJ had "the sole right to make a decision or determination." (Baker Cert., Exhibit "B" pp. 12). The 2010 Plan defines a Network Provider as "a provider which has an agreement, directly or indirectly with Us to provide Covered Services or Supplies." (Baker Cert., Exhibit "B" pp. 18). Under the 2010 Plan, a Non-Network Provider is defined as "a Provider which is not a Network Provider." (Baker Cert., Exhibit "B" pp. 21). The 2010 Plan specifically and unequivocally states:

> Except in cases of emergency, services are available only from Network Providers. We shall have no liability or obligation whatsoever on account of any service or benefit sought or received by a Member from any Provider or other person, entity, institution or organization unless prior arrangements are made by Us.

(Baker Cert., Exhibit "B" pp. 35).

The 2010 Plan also contains a well-defined appeal process. For appealing a decision that is not a utilization review determination, the "first step is to call the Health Net customer service toll-free number on Your ID card. If after speaking with a representative You are still dissatisfied with the Health Net decision, You have the right to file a complaint." (Baker Cert., Exhibit "B" pp. 38-39). If the member or representative is still dissatisfied, they "have up [sic] 180 days from the date of the event to file a complaint. A complaint can be made over the phone … or by writing to: Health Net Customer Service Department, 3501 State Highway 66, Neptune, NJ 07754." (*Id.*).

### 3. HNNJ's Proper Denial of Benefits

Plaintiff Northern NJ Ortho submitted claims for "surgical services" for date of service May 4, 2009 in the amount of $6,967.75. HNNJ denied payment on that basis that "this claim has been denied due to the fact that we have never received a related bill from the hospital. We will review and reprocess your claim as soon as the hospital bill is received. (Baker Cert., Exhibit "C"). Plaintiff Northern NJ Ortho submitted claims for "neurology procedures" for date of service February 2, 2010 in the amount of $2,176. (Baker Cert., Exhibit "C"). HNNJ erroneously made payment on the claim in the amount of $2,028.28. As Plaintiff Northern NJ Ortho was a non-network provider, pursuant to the 2010 Plan, no payment should have been made. (Certification of Edward R. Muehlbauer, ¶ 3).

Plaintiff Dr. Cohen submitted claims for "surgical services" for date of service May 4, 2009 in the amount of $74,628. (Baker Cert., Exhibit "C"). HNNJ denied payment on the basis that the "we have never received a related bill from the hospital. We will review and process your claim as soon as the hospital bill is received." (Baker Cert., Exhibit "C"). Plaintiff Dr. Cohen submitted claims for "surgical services" for date of service February 2, 2010 in the amount of $73,208. (Baker Cert., Exhibit "C"). HNNJ denied payment on the basis that the "provider is not within your assigned network of providers and the service is not considered emergent." Plaintiff Dr. Most submitted claims for "surgical services" for date of service February 2, 2010 in the amount of $21,930. (Baker Cert., Exhibit "C"). HNNJ again denied payment on the basis that the "provider is not within your assigned network of providers and the service is not considered emergent." (Baker Cert., Exhibit "C").

Plaintiff Bergen Anesthesia submitted claims for "anesthesia services" for date of service February 2, 2010 in the amount of $4,950. (Baker Cert., Exhibit "C"). HNNJ erroneously made payment on the claim in the amount of $2,923.88. As Plaintiff Bergen Anesthesia was a non-

network provider, pursuant to the 2010 Plan, no payment should have been made. (Muehlbauer Cert., ¶ 4).

4. **The Appeals Record**

Dissatisfied with the benefit determination, Plaintiff Dr. Cohen submitted an appeal to HNNJ dated June 3, 2010. This appeal corresponded to the February 2, 2010 date of service. The appeal stated:

> I recently received your denial for D.O.S. February 2, 2010, stating "claim has been denied because provider is not within the member's assigned network." I feel this is incorrect because on January 20, 2010 my office spoke with Sabine from health net [sic] and were informed no authorization was required.
>
> I may ask that you reconsider my bill for payment as this procedure was medically necessary and the patient does have out of network benefits.
>
> This letter will act as my letter of appeal.

(Baker Cert., Exhibit "D"). HNNJ responded to this appeal on June 14, 2010, and advised Dr. Cohen:

> After a review this grievance and documentation submitted, I have made the determination to uphold the original denial. Per the member's Health Net Benefit Agreement coverage for services rendered by non-participating providers is not a covered benefit; therefore, reimbursement will not be issued for these services.

(Baker Cert., Exhibit "E").

Dissatisfied with their benefit determination, Plaintiff Bergen Anesthesia submitted an appeal to HNNJ dated April 6, 2010. This appeal corresponded to the February 2, 2010 date of service. The appeal stated:

> We are requesting that the attached claim(s) be reviewed and reprocessed for additional payment. We are a nonparticipating provider that provided anesthesia services without any prejudice to our patient and the patient does not have a choice in the anesthesia doctor. The patients are not being held responsible at this point in

7

> time until HEALTHNET reviews our request. If HEALTHNET doesn't feel any other payment can be made, we have the right to hold patients responsible for the balance.

(Baker Cert., Exhibit "F"). HNNJ responded to this appeal on April 12, 2010, and advised Bergen Anesthesia:

> After a review this grievance, the documentation submitted and the member's claims for the above date of service, I have made the determination that the claim was processed correctly. If a member prefers to utilize a Health Net non-participating provider the member is responsible for the payment of the applicable calendar year cash deductible and/or coinsurance per the Evidence of Coverage. The member opted to use a non-participating facility and a non-participating surgeon therefore the related claims are also processed according to the member's Out-of-Network benefits. Therefore additional reimbursement will not be issued.

(Baker Cert., Exhibit "G").

Neither Plaintiff Northern NJ Ortho, nor Dr. Most submitted any appeals for the services at issue. (Muehlbauer Cert., ¶ 6).

8

## LEGAL ARGUMENT

A.     The Legal Standard

Rule 56(c) of the Federal Rules of Civil Procedure provides for the entry of summary judgment when the materials of record "show that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law." Although a Court must view the evidence in the light most favorable to the non-moving party, Rule 56(c) requires the entry of summary judgment against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case. *See McCall v. Metropolitan Life Insurance Company*, 956 F. Supp. 1172, 1179-80 (D.N.J. 1996). When, as in this case, the Defendant shows "that there is an absence of evidence to support [the plaintiff's] case," the plaintiff must produce sufficient evidence to support its claims. *Celotex Corp. v. Catrett,* 477 U.S. 316, 325 (1986); *see McCall*, 956 F.Supp. at 1180.

In this case, HNNJ is entitled to summary judgment because there can be no genuine dispute of material fact regarding Plaintiff Northern NJ Ortho and Plaintiff Dr. Most's failure to exhaust the mandatory administrative appeals process, as well as HNNJ's proper application of its discretionary authority to deny benefits under the terms of the Plans. Because HNNJ's determinations were based upon the applicable plan language barring coverage for out-of-network providers and the administrative record reviewed on appeal, Plaintiffs cannot maintain a claim that HNNJ acted arbitrarily and capriciously.

B.     **Plaintiffs Northern NJ Ortho and Dr. Most Failed to Exhaust the Mandatory Administrative Appeals Process under the Terms of the Plans**

It is well settled that a participant in an employee benefit plan must exhaust the appeal procedures available under the plan before bringing an action to recover benefits. A plan beneficiary claiming an improper denial of benefits must "exhaust the internal administrative

9

procedures made available by the ERISA plan at issue before seeking judicial relief." *Majka v. Prudential Ins. Co.*, 171 F.Supp.2d 410, 414 (D.N.J. 2001). "Except in limited circumstances, federal court will not entertain an ERISA claim unless the plaintiff has exhausted the administrative remedies under the plan." *Harrow v. Prudential Ins. Co.*, 279 F.Supp.2d 244, 249 (D.N.J. 1999)(dismissing the complaint against plan administrator for wrongful denial of benefits under Section 502(a)). The Third Circuit has described the exhaustion requirement as a judicial innovation serving many sound policies, such as reducing frivolous lawsuits, promoting the consistent treatment of claims for benefits, and enhancing fiduciary management of claims by preventing premature judicial intervention in the plan fiduciaries decision-making process. *Metropolitan Life Ins. Co. v. Price,* 501 F.3d 271, 279 (3d Cir. 2007).

In this case, both the 2009 and 2010 ERISA-governed Plans contain an identical appeals procedure. It is uncontroverted, that neither Plaintiff Northern NJ Ortho, nor Plaintiff Dr. Most filed any type of appeal for the adverse benefit determinations as issue. As these Plaintiffs failed to file any type of appeal, they have failed to exhaust the mandatory appeals procedures as contained in the 2009 and 2010 ERISA governed Plans. Accordingly, HNNJ is entitled to summary judgment as a matter of law with respect to these claims brought on behalf of Plaintiffs Northern NJ Ortho and Dr. Most.

C.  **HNNJ's Benefit Determinations were not Arbitrary and Capricious**

A denial of benefits challenged under 29 U.S.C. § 1132(a)(1)(B) is reviewed de novo "unless the benefit plan gives the administrator . . . discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Howley v. Mellon Fin. Corp.*, 625 F.3d 788, 792 (3d Cir. 2010) (internal citations omitted). When discretionary authority is given to the administrator, the denial of benefits is reviewed only for abuse of discretion. *Id.* Thus, an

administrator's decision will be overturned only "if it is "without reason, unsupported by substantial evidence or erroneous as a matter of law.'" *Miller v. Am. Airlines, Inc.,* 632 F.3d 837, 845 (3d Cir. 2011) (*quoting Abnathya v. Hoffmann-La Roche, Inc.,* 2 F.3d 40, 45 (3d Cir. 1993)). *See also Estate of Schwing v. Lilly Health Plan,* 562 F.3d 522, 525 (3d Cir. 2009), *cert. denied,* 131 S. Ct. 1048 (2011); *Gambino v. Arnouk,* 232 Fed. Appx. 140, 145 (3d Cir. 2007). Where the claim administrator's actions were based upon the clear language of the policy, the actions were not "arbitrary or capricious" as a matter of law and the court must defer to the Claim Administrator. *Shapiro v. Metro. Life Ins. Co.,* Civ. A. No. 08-6204, 2010 WL 1779392 (D.N.J. Apr. 30, 2010), aff'd, 430 Fed. App'x 169 (3d Cir. 2011). Furthermore, "[t]he Court may not substitute its own judgment as to the interpretation of the plan where this heightened standard is deemed appropriate." *Id.* at *4-5 (*citing Moats v. United Mine Workers of Am. Health & Ret. Funds,* 981 F.2d 685, 687-88 (3d Cir. 1992)).

Moreover, it is well-settled that when a plan administrator's benefits decision is subject to arbitrary and capricious review, a court reviewing must look only to the evidence before the administrator at the time the decision was made. Howley, 625 F.3d at 793; *Marciniak v. Prudential Fin. Ins. Co. of Am.,* 184 Fed. Appx. 266, 269 (3d Cir. 2006). This is because only the materials considered by the administrator are relevant to the analysis of whether the decision rendered was or was not "arbitrary and capricious." Howley, 625 F.3d at 793.

In this case, a review of the administrative record makes it clear that only appeals filed were by Plaintiffs Dr. Cohen and Bergen Anesthesia, for the February 2, 2010 date of service. The appeals submitted by Plaintiff Dr. Cohen and Plaintiff Bergen Anesthesia simply requested that the claims be paid in full; neither appeal contained any information upon which HNNJ could reasonably be expected to overturn its benefit determination. HNNJ properly denied the claims

11

submitted by Dr. Cohen on the basis that under the 2010 Plan, no coverage is provided for services rendered by non-network providers.[1] HNNJ's determination was based upon the clear terms of the Plan; therefore, it cannot be argued that the benefit determination was arbitrary and capricious. As no evidence has been put forth which would even suggest the benefit determinations in these matter were arbitrary and capricious, HNNJ is entitled to summary judgment as a matter of law.

### D. ERISA Completely and Expressly Preempts Plaintiffs' State Law Claims

Plaintiffs' state law claim for negligent misrepresentation arising from HNNJ's denial of benefits fails as a matter of law because they are preempted by ERISA. ERISA contains two statutory provisions which preempt state law causes of action. The first of ERISA's two preemption provisions, Section 502(a) of ERISA, 29 U.S.C. §1132(a), sets forth a comprehensive civil enforcement scheme which forecloses state law claims that seek to supplement or supplant its remedies. Any claim that falls within the scope of Section 502(a) is completely preempted. *Pryzbowski v. U.S. Healthcare,* 245 F.3d 266, 271-72 (3d Cir. 2001).

In order to maintain the integrity of its exclusive regulatory scheme, ERISA also contains an express preemption clause. Section 514(a) of ERISA, 29 U.S.C. §1144(a), preempts "any and all state laws" that "relate to any employee benefit plan." Although not without limits, the Supreme Court has repeatedly found that the express preemption provisions of Section 514(a) of ERISA are deliberately expansive. *Pilot Life Ins. Co. v. Deadeaux,* 481 U.S. 41, 46 (1987). "[ERISA's] pre-emption clause is conspicuous for its breadth. It establishes an area of federal

---

[1] Health Net erroneously made payment on the claim submitted by Bergen Anesthesia for the February 2, 2010 date of service. Under the terms of the 2010 Plan, no payment should have been provided as out-of-network services were excluded from coverage. This erroneous payment does nothing to dispute the fact that payment should not have been made. The other claims were clearly processed pursuant to the terms of the 2009 and 2010 Plans. As such, Plaintiffs cannot illustrate that the proper benefit determinations were arbitrary and capricious based on an erroneous payment being made.

concern the subject of every state law that 'relate[s] to' an employee benefit plan governed by ERISA." *FMC Corp. v. Holliday,* 498 U.S. 52, 58 (1990).

 1. **Section 502(a) of ERISA Completely Preempts Plaintiffs' State Law Claim for Negligent Misrepresentation**

Section 502(a) of ERISA completely preempts Plaintiffs' state law claim for negligent misrepresentation because it improperly seeks to duplicate and supplement the exclusive remedies available under ERISA. Under Section 502(a), "any state law cause of action that duplicates, supplements or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore preempted." *Davila,* 542 U.S. at 209. For this reason, any claim that "challenges the administration of or eligibility for benefits" is completely preempted and must be dismissed." *Pryzbowski*, 425 F.3d at 273.

In this case, Plaintiffs' state law claim for negligent misrepresentation is based on the allegation that HNNJ failed to pay benefits for the services rendered to E.C. Because this state law claim seeks to recover benefits allegedly due enter the ERISA-governed employee health benefit plan, they are completely preempted. *Aetna Health, Inc. v. Davila,* 542 U.S. 200, 209 (2004).

 2. **Section 514(a) of ERISA Expressly Preempts NJ Back's State Law Claims**

Section 514(a) of ERISA, 29 U.S.C. § 1144(a), expressly preempts any state law that relates to an employee benefit plan. One primary purpose of this provision is to eliminate the risk of conflicting and inconsistent state regulation of employee benefit plans. *Metz v. United Counties Bancorp.,* 61 F.Supp.2d 364, 381(D.N.J. 1999). For this reason, courts have repeatedly held that Section 514(a) preempts state law claims that an insurer misrepresented the amount or

13

availability of benefits under an employee benefit plan.  *See, e.g. Metz,* 61 F.Supp.2d at 381; *Kelso v. General American Life Ins. Co.,* 967 F.2d 388, 390-91 (10th Cir. 1992).  Because NJ Backs' claims are based on the alleged denial of payment of benefits under the plan, they once again involve the administration of benefits and relate to the Plan.  Indeed, NJ Plaintiffs state law claim poses the precise risk of inconsistent state regulation that Section 514(a) is designed to prevent.  If claims like those plead by Plaintiffs are allowed to stand, a provider could bring a state court action for damages any time a benefit plan denied coverage or reduced benefits because the services were not otherwise covered under the terms of a plan.

## CONCLUSION

For the foregoing reasons, Defendant Health Net of New Jersey, Inc. ("HNNJ") respectfully requests that this Court grant summary judgment in is favor and dismiss Plaintiffs' complaint with prejudice.

**CONNELL FOLEY LLP**
Liberty View
457 Haddonfield Rd., Ste. 230
Cherry Hill, New Jersey 08002
(856) 317-7100
*Attorneys for Defendant*
*Health Net of New Jersey*

BY: /s/ Matthew A. Baker
Matthew A. Baker, Esquire

DATE:   August 23, 2013